IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| KATIE CHUBB, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CAYLEE NOGGLE, Commissioner of the Georgia Department of Community Health, et al.,<br><br>Defendants. | CIVIL ACTION FILE<br>NO. 1:22-CV-3289-TWT |

**OPINION AND ORDER**

This is a Section 1983 action arising out of the denial of a Certificate of Need for a medical facility. It is before the Court on the Defendants' Motion to Dismiss [Doc. 17]. For the reasons set forth below, the Defendants' Motion to Dismiss [Doc. 17] is GRANTED.

## I. Background[1]

This case arises from the denial of a Certificate of Need ("CON") application that the Plaintiff Katie Chubb filed with the Georgia Department of Community Health (the "Department") on behalf of the Plaintiff Augusta Birth Center, Inc. ("ABC") (Compl. ¶ 1–5). Chubb is the executive director and a principal shareholder of ABC; she is also studying to become a certified nurse

---

[1] The Court accepts the facts as alleged in the Complaint as true for purposes of the present Motion to Dismiss. *Wildling v. DNC Servs. Corp.*, 941 F.3d 1116, 1122 (11th Cir. 2019).

midwife. (*Id.* ¶ 9). ABC is nonprofit corporation seeking to "provide safe, effective, and affordable childbirth services to Georgia mothers." (*Id.* ¶ 10).

Georgia's CON program establishes a system of mandatory review of new institutional health services "to ensure access to quality health care services and to ensure that health care services and facilities are developed in an orderly and economical manner and are made available to all citizens." O.C.G.A. § 31-6-1. The Department is responsible for administering the CON program, promulgating rules to administer the program, issuing permits to health care facilities, and promulgating rules for the permitting process. O.C.G.A. §§ 31-6-21, 31-7-3, 31-7-2.1.

Before providing services to patients, a prospective birth center in Georgia must first obtain a CON from the Department. O.C.G.A. § 31-6-40; Ga. Comp. R. & Regs. R. 111-2-2-.25. To obtain a CON, the applicant must show compliance with each of the seventeen general CON requirements, which govern all CON-regulated health services, and also any service-specific requirements related to the applicant's type of health service. O.C.G.A. § 31-6-42; Ga. Comp. R. & Regs. R. 111-2-2-.11. After obtaining a CON, the birth center applicant must then obtain a permit from the Department and show it will comply with the facility regulations. O.C.G.A. §§ 31-7-1(4)(E), 31-7-3(a); Ga. Comp. R. & Regs. R. 111-8-7-.02(2).

Relevant to the present case, the CON service-specific requirements for freestanding birth centers require that the centers have "a written agreement

for transfer and emergency services with a backup hospital(s) that provides at least Level II perinatal services." Ga. Comp. R. & Regs. R. 111-2-2-.25(4). The facility regulations for freestanding birth centers have a similar requirement.[2] *See* Ga. Comp. R. & Regs. 111-8-7-.07. Also relevant to the present case, one of the seventeen general CON requirements includes a provision mandating that "existing alternatives for providing services in the service area the same as the new institutional health service proposed are neither currently available, implemented, similarly utilized, nor capable of providing a less costly alternative, or no Certificate of Need to provide such alternative services has been issued by the Department and is currently valid." Ga. Comp. R. & Regs. 111-2-2-.09(1)(c).[3]

In August 2021, the Plaintiffs submitted their CON application for the Augusta Birth Center to the Department, and on December 22, 2021, the Department denied their application. (Compl. ¶¶ 47, 52). The Plaintiffs claim that the Department denied their application "for the sole reason of failing to secure the cooperation of their direct competitors and to secure an emergency transfer agreement." (*Id.* ¶ 52). The Defendants claim that the Department also denied their application based on their failure to comply with three other

---

[2] The Court refers to these two similar requirements collectively as the "transfer agreement" provision.
[3] The Court refers to this requirement as the "existing alternatives" provision.

3

CON requirements not challenged in the present action.[4] (Br. in Supp. of Defs.' Mot. to Dismiss, at 9). On August 16, 2022, the Plaintiffs filed suit challenging both the transfer agreement and the existing alternatives requirements as facially unconstitutional. They claim that the provisions violate the Ninth Amendment and the Due Process, Equal Protection, and Privileges or Immunities Clauses of the Fourteenth Amendment. (Compl. ¶ 6). The Defendants now move to dismiss all of the Plaintiffs' claims.

## II. Legal Standard

A complaint should be dismissed under Rule 12(b)(1) only where the court lacks jurisdiction over the subject matter of the dispute. Fed. R. Civ. P. 12(b)(1). Attacks on subject matter jurisdiction come in two forms: "facial attacks" and "factual attacks." *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1260 (11th Cir. 1997). Facial attacks on the complaint "require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Id.* at 1261 (quotation marks, citation, and brackets omitted). On a facial attack, therefore, a plaintiff is

---

[4] The three additional, unsatisfied requirements are Rule 111-2-2-.25(3) (requiring function as part of an established regionalized system of perinatal care), Rule 111-2-2-.25(5) (requiring demonstration of availability of ambulance service agreements), and Rule 111-2-2-.09(1)(a) (requiring that proposed services are reasonably consistent with the relevant general goals and objectives of the State Health Plan). *See* ABC's Evaluation for CON, GA. DEP'T CMTY. HEALTH, at 4–5, 10.

afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion. *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981). "Factual attacks, on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Garcia*, 104 F.3d at 1261 (quotation marks omitted). On a factual attack, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Scarfo v. Ginsberg*, 175 F.3d 957, 960–61 (11th Cir. 1999) (quotation marks and citation omitted).

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983); *see also Sanjuan v. American Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff

5

"receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

### III. Discussion

In support of their motion to dismiss, the Defendants first argue that the Plaintiffs lack standing to bring their constitutional claims and that those claims should therefore be dismissed under Federal Rule 12(b)(1). (Br. in Supp. of Defs.' Mot. to Dismiss, at 8–10). The Defendants then argue that even if the Plaintiffs had standing, they still fail to state a claim for which relief can be granted, requiring dismissal under Federal Rule 12(b)(6). (Br. in Supp. of Defs.' Mot. to Dismiss, at 10–24). The Court addresses each of these arguments and the Plaintiffs' responses thereto in turn.

#### A. Standing

To establish constitutional standing under Article III, a plaintiff must show "(1) an injury in fact, meaning an injury that is concrete and particularized, and actual or imminent, (2) a causal connection between the injury and the causal conduct, and (3) a likelihood that the injury will be redressed by a favorable decision." *CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1269 (11th Cir. 2006) (citation omitted). Further,

"when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a *substantial likelihood that he will suffer injury in the future.*" *Worthy v. City of Phenix City, Alabama*, 930 F.3d 1206, 1215 (11th Cir. 2019) (citation omitted). In assessing the substantial likelihood of future injury, courts consider "whether the plaintiff is likely to have another encounter with a government officer due to the same conduct that caused the past injury." *Id.* (citation omitted). The burden of establishing standing falls on the plaintiff, who at the motion to dismiss stage must provide "general factual allegations of injury resulting from the defendant's conduct." *Id.* at 1214. (citation omitted). Finally, the plaintiff must establish standing for each challenged provision in its asserted claims. *CAMP Legal Def. Fund*, 451 F.3d at 1273. Though centered on redressability, the parties' arguments implicate both the first and third elements of the constitutional standing inquiry. The Court considers them in turn.

1. **Injury in Fact**

As an initial matter, the parties dispute the nature of the Plaintiffs' alleged injury. In their response brief, the Plaintiffs contend that they seek "prospective relief from the challenged provisions—not direct relief from the Department's prior decision," and that their "seek[ing] injunctive relief against the enforcement of the challenged regulations" will allow them to "apply for a Certificate without being subject to the unconstitutional provisions" in the future. (Pls.' Resp. Br. in Opp'n to Defs.' Mot. to Dismiss, at 7, 10). In essence,

7

the Plaintiffs claim injury from being forced to "undergo the unconstitutional burden of satisfying" the regulatory requirements to obtain a CON for their proposed freestanding birth center. (*Id.* at 7 n.2). The Defendants argue, in reply, that the "Plaintiffs attempt to plead around the redressability requirement by asserting a newfound injury not identified in the Complaint: the unconstitutional burden of submitting to or enduring the CON review process, 'which entails significant effort and expense.'" (Reply Br. in Supp. of Defs.' Mot. to Dismiss, at 3–4 (quoting Pls.' Resp. Br. in Opp'n to Defs.' Mot. to Dismiss, at 6–7, 7 n.2, 10)). The Court finds that the Plaintiffs' framing of their injury in this manner cannot support standing for several reasons.

Aside from the fact that the Plaintiffs fail to plead this injury in their Complaint, the Plaintiffs do not cite any case law in support of their position that such an injury is even cognizable under established standing precedent. (*See* Pls.' Resp. Br. in Opp'n to Defs.' Mot. to Dismiss, at 7, 7 n.2, 10). A plaintiff's injury must be *concrete* to support constitutional standing, meaning that the injury must "actually exist" and be real, not abstract. *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236, 1242–43 (11th Cir. 2022) ("[T]he requirement that an injury be concrete is 'essential to the Constitution's separation of powers' because it ensures that plaintiffs have a real stake in the actions they bring; it confines the courts to the business of deciding disputes between parties." (citation omitted)). The Eleventh Circuit recently affirmed that concrete injury includes not only "straightforward

economic injuries" but also "more nebulous" injuries, such as "wasted time, missed credit opportunities, and emotional distress." *Walters v. Fast AC, LLC*, 2023 WL 1771643, at *3 (11th Cir. Feb. 6, 2023). However, the Plaintiffs' alleged injury here—the prospect of having their future CON application considered under two allegedly unconstitutional statutes—is incongruous with the examples of more nebulous injury set forth in *Walters*.

The Court finds that the Plaintiffs' alleged injury is instead more akin to the procedural statutory violations, referenced in *Walters*, that were at issue in *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 924 (11th Cir. 2020). *Walters*, 2023 WL 1771643, at *4. The Defendants cite *Muransky* in support of their position that the Plaintiffs fail to allege a legally cognizable injury. (Reply Br. in Supp. of Defs.' Mot. to Dismiss, at 3). And although *Muransky* is factually distinguishable from the present case because the plaintiffs in that case alleged violations of a federal fair credit statute, whereas the Plaintiffs here allege violations of their constitutional rights, analogous principles bear on *Muransky* and the present case: namely, that a plaintiff cannot establish standing from a bare legal violation without also showing direct harm or a "risk of real harm" from the violation itself. *Muransky*, 979 F.3d at 926–27; *Walters*, 2023 WL 1771643, at *4. Fear of a hypothetical future harm is insufficient to establish concrete injury. *Muransky*, 979 F.3d at 926 (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013)).

The question here then is whether the Plaintiffs allege a legal violation that shows a risk of real harm. As the Court reads the Complaint, the only risk of real harm to the Plaintiffs is that the Defendants will deny their CON application under the challenged provisions. Thus, the inquiry comes full circle. Because the risk of real harm under the Plaintiffs' prospective injury theory and the harm emanating from the Complaint's allegations are one in the same, the Court proceeds with the analysis assuming the injury is the denial of their CON application. *Cf. Am. Fed'n of State, Cnty. & Mun. Emps. Council 79 v. Scott*, 717 F.3d 851, 864 (11th Cir. 2013) ("As a general matter, courts strongly disfavor facial challenges, and for good reason: Claims of facial invalidity often rest on speculation. As a consequence, they raise the risk of premature interpretation of statutes on the basis of factually barebones records. . . . Thus, courts construe a plaintiff's challenge, if possible, to be as-applied." (citations omitted)).

The allegations of the Complaint itself support the Court's conclusion on this point. The Plaintiffs' pleaded injury sounds more in the Department's denial of their CON application than in some future harm from reapplying for their CON. (*See, e.g.*, Compl. ¶ 1 ("Ms. Chubb has been prevented from opening a birth center due to a state law that places the economic interests of existing hospitals over Plaintiffs' constitutional rights."); *id.* ¶ 2 ("Ms. Chubb was denied permission to operate a birth center solely because of her inability to secure local hospitals' permission to open."); *id.* ¶ 23 ("If allowed to operate,

ABC would focus on low-risk births utilizing a physician-supervised midwifery model, in accordance with Georgia regulations.")). The parties do not appear to dispute that the Plaintiffs have injury in fact from the Department's denial of their CON application, nor does the Court have any trouble finding injury in fact from their allegations. Thus, the Court turns to the redressability of the Plaintiffs' alleged harm.

## 2. Redressability

To satisfy the redressability element of standing, the plaintiff must show that "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000). Therefore, "a plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself. He need not show that a favorable decision will relieve his *every* injury." *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982).

The Defendants make two primary arguments in support of their position that the Plaintiffs' claims lack redressability. (Br. in Supp. of Defs.' Mot. to Dismiss, at 8–10). First, they argue that a favorable decision on the challenged regulatory provisions would not redress the Department's denial of the Plaintiffs' CON application because the Plaintiffs failed to satisfy three other CON requirements that are not challenged here. (*Id.* at 9). And second, the Defendants claim that the Plaintiffs lack standing to challenge the existing alternatives requirement because they have not suffered any redressable

11

injury, considering that the Department found that requirement favored approval of the Plaintiffs' CON application. (*Id.* at 10). The Plaintiffs argue, in response, that they seek prospective relief from the challenged provisions, not direct relief from the Department's denial of their birth center application, and that the existence of future obstacles to their CON application does not preclude their challenge of the provisions here. (Pls.' Resp. Br. in Opp'n to Defs.' Mot. to Dismiss, at 7–8).

To begin with, the Court agrees that the Plaintiffs fail to show redressable harm as to the existing alternatives requirement. The Plaintiffs have failed to carry their burden to show that it is likely, as opposed to speculative, that their injury—their inability to open the Augusta Birth Center—will be redressed by a favorable decision regarding the existing alternatives provision. Because the Department found that the provision supported the Plaintiffs' CON application, a favorable decision by this Court on the provision will not relieve the Plaintiffs' injury—the denial of their CON application. Nor is a favorable decision on the provision substantially likely to relieve the Plaintiffs' injury in the future. So long as the Plaintiffs intend to open their birth center in the Augusta area—an intention of which the Court finds no allegations to the contrary—the Plaintiffs' harm cannot be redressed by a favorable decision on the existing alternatives provision. Accordingly, they lack standing to challenge the provision.

12

In addition, the Plaintiffs' injury is not redressable under either the existing alternatives or transfer agreement requirements because their CON application "failed to meet the requirements of other [provisions] not challenged." *KH Outdoor, L.L.C. v. Clay Cnty., Fla.*, 482 F.3d 1299, 1303 (11th Cir. 2007). The Plaintiffs attempt to distinguish *KH Outdoor* from the present case, arguing that the injunctive relief and damages sought by the plaintiffs in *KH Outdoor*, which in effect required issuance of the sign permits denied by the defendant, are distinguishable from the declaratory and injunctive relief sought here by the Plaintiffs. (Pls.' Resp. Br. in Opp'n to Defs.' Mot. to Dismiss, at 10 (citing *KH Outdoor*, 482 F.3d at 1301)). But as concluded above, the risk of real harm from the prospective relief sought by the Plaintiffs is indeed the risk of denial of their CON application. And because they failed to meet at least three other CON requirements in their application that are not challenged in the present case, their injury is not redressable by a favorable decision on the provisions challenged here. Therefore, they lack standing to challenge both the existing alternatives and transfer agreement requirements under *KH Outdoor*.

The Plaintiffs' reliance on *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 260–62 (1977), and other similar cases, is unavailing. (Pls.' Resp. Br. in Opp'n to Defs.' Mot. to Dismiss, at 8–9). As the Defendants note, the additional obstacles implicating redressability here are legal hurdles posed by the unchallenged CON requirements, as opposed to the non-legal hurdles in *Arlington Heights* that included securing

13

financing, qualifying for subsidies, and completing construction. (Reply Br. in Supp. of Defs.' Mot. to Dismiss, at 3); *Arlington Heights*, 429 U.S. at 261. Moreover, the challenged provisions here were not the "sole basis" for the Department's decision denying the Plaintiffs' CON application, as was the case for the regulation challenged in *Larson*, 456 U.S. at 242–43 (1982). Accordingly, because the Plaintiffs lack standing to challenge the existing alternatives and transfer agreement requirements, the Court lacks subject matter jurisdiction and dismissal under Federal Rule 12(b)(1) is required.

### B. Failure to State a Claim

Because the Plaintiffs lack standing, the Court cannot reach the merits of their claims and thus declines to address the Defendants' arguments under Rule 12(b)(6).

## IV. Conclusion

For the foregoing reasons, the Defendants' Motion to Dismiss [Doc. 17] is GRANTED.

SO ORDERED, this ___24th___ day of February, 2023.

THOMAS W. THRASH, JR.
United States District Judge